IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

DORSEY JACKSON
5551 Wheeler Street
Philadelphia, PA 19143

           Plaintiff,

v.

WATERLOGIC USA, INC.
77 McCullough Drive #9
New Castle, DE 19720

           Defendant.

Civil Action No.: _____

**JURY TRIAL DEMANDED**

---

## COMPLAINT – CIVIL ACTION

Plaintiff, Dorsey Jackson ("Plaintiff"), by and through his undersigned attorney, for his Complaint against Waterlogic USA, Inc. ("Defendant"), alleges as follows:

1. Plaintiff initiates this action to redress violations by Defendant of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), as detailed herein. Plaintiff further contends that Defendant wrongfully discharged him in violation of Pennsylvania public policy for asserting his rights under the Pennsylvania Workers' Compensation Act.

## PARTIES

2. Plaintiff Dorsey Jackson is a citizen of the United States and Pennsylvania, where he currently maintains an address at 5551 Wheeler Street, Philadelphia, PA 19143.

3. Defendant Waterlogic USA, Inc. is a for-profit corporation organized and existing under the laws of the State of Delaware with a principal business location of 77 McCullough Drive #9, New Castle, DE 19720.

4. At all times relevant hereto, Defendant acted or failed to act through its agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

## JURISDICTION AND VENUE

5. Paragraphs 1 through 4 are hereby incorporated by reference as though the same were fully set forth at length herein.

6. On or about November 30, 2016, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC") which was dually filed with the Pennsylvania Human Relations Commission, thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e). Plaintiff's EEOC charge was docketed as Charge No. 530-2017-00746. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice alleged herein.

7. By correspondence dated September 14, 2017, Plaintiff received a Notice of Right to Sue from the EEOC regarding his Charge, advising him that he had ninety (90) days to file suit against Defendant.

8. On or about December 5, 2017, within the statutory time frame applicable to his Complaint, Plaintiff filed the instant action.

9. Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

10. This action is authorized and initiated pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

11. This Court has jurisdiction over this matter, pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

12. This Court has pendant jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as those claims arise from the same common nucleus of operative fact as his federal claims.

13. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as the Plaintiff resides in this judicial district and the events giving rise to this action occurred in this judicial district.

## GENERAL FACTUAL ALLEGATIONS

14. Paragraphs 1 through 13 are hereby incorporated by reference as though the same were fully set forth at length herein.

15. Plaintiff first began his employment with Defendant in or around June 2015, when he was hired as a Sales Representative.

16. Throughout the course of his employment, Plaintiff performed his job well, receiving positive feedback regarding his performance and no discipline.

17. Plaintiff was assigned a sales area coterminous with the City of Philadelphia, Pennsylvania, where he performed the vast majority of his work for Defendant.

18. Plaintiff's immediate supervisor was Rich Casler ("Mr. Casler"), North East Area Sales Manager from June 2015 until around January 2016, when Mr. Casler was promoted to Director of Sales.

19. In or around January 2016, Larry Erdman ("Mr. Erdman") became Plaintiff's immediate supervisor.

## FACTUAL ALLEGATIONS PERTAINING TO PLAINTIFF'S RACE DISCRIMINATION AND RETALIATION CLAIMS

20. Paragraphs 1 through 19 are hereby incorporated by reference as though the same were fully set forth at length herein.

21. Plaintiff is an African American male.

22. While at work in or around November 2015, one of Plaintiff's coworkers, Greg Carlucci ("Mr. Carlucci"), remarked to Plaintiff, "We should kill all the Muslims. They're nothing but terrorists."

23. Plaintiff responded by telling Mr. Carlucci that this comment was inappropriate and racist.

24. Mr. Carlucci also referred to then President Barack Obama as "the worst president," and, as if by way of apology, insisted to Plaintiff (who is African American), "I'm not racist."

25. Upon information and belief, Mr. Carlucci subsequently showed an offensive picture of President Obama to Plaintiff's colleagues during a group lunch.

26. Plaintiff complained about these incidents to Mr. Erdman and Mr. Casler.

27. Mr. Casler responded by telling Plaintiff that Mr. Carlucci had denied saying "Muslims," and that he had only been referring to "terrorists."

4

28. Upon information and belief, Defendant took no further action to address Plaintiff's complaint.

29. In or around March 2016, Plaintiff was introduced to a newly-hired sales representative, Ismael Vargas ("Mr. Vargas").

30. Mr. Vargas told Plaintiff that he had been hired as the "new Latino Sales Representative for Philadelphia."

31. Upon information and belief, Mr. Vargas is Latino and is originally from Puerto Rico.

32. Around the time Plaintiff met Mr. Vargas, he learned that Defendant had removed northern Philadelphia, which has a large Latino population, from his sales territory, resulting in the elimination of approximately half of Plaintiff's sales potential.

33. Upon information and belief, Defendant reassigned this territory to Mr. Vargas.

34. Plaintiff complained to Mr. Erdman and Bill Monroe ("Mr. Monroe"), Defendant's "Director of People," i.e. Human Resources Director, regarding this reassignment and Mr. Vargas' comment to him, complaining that he felt it was unfair to reassign his sales territory to Mr. Vargas because the latter was Latino.

35. Mr. Erdman acknowledged that Mr. Casler had warned him that Plaintiff would not be pleased to hear that his territory was being reassigned.

36. For his part, Mr. Monroe attempted to downplay Plaintiff's allegations that Defendant's reassignment of the territory was racially-motivated, stating that Mr. Vargas "could have phrased it better."

37. Despite Plaintiff's complaints, Defendant did not restore Plaintiff's sales territory.

38. In or around May 2016, Plaintiff again complained to Mr. Casler, reiterating that he felt it was unfair to reassign his sales territory to Mr. Vargas because of his race.

39. Shortly thereafter, on or around June 6, 2016, Plaintiff was terminated for reasons which are clearly pretextual.

40. In this regard, Plaintiff was told that, while he was a hard and productive worker, his employment was being terminated due to allegedly failing to meet sales goals.

41. However, upon information and belief, other non-African American employees had similar sales numbers but were not terminated.

42. In addition, upon information and belief, Defendant's decision to reassign a significant portion of Plaintiff's sales territory to Mr. Vargas negatively impacted his ability to effect sales.

43. It is believed and therefore averred that Defendant's stated reason for Plaintiff's discharge was pretextual and that Defendant stripped him of his job duties and re-assigned them to Mr. Vargas on the basis of race, and in an apparent attempt to satisfy a perceived customer bias toward Hispanic and/or Latino Sales Representatives.

44. Upon information and belief, in addition to having a portion of his sales area reassigned to a Hispanic/Latino employee, Plaintiff was replaced by a non-African American employee.

45. It is believed and therefore averred that Defendant terminated Plaintiff's employment because of his race and because of his complaints to management and Human Resources about what he perceived to be race discrimination in the workplace.

46. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has and is suffering significant mental, physical, and economic damages, including, but not limited to, loss of income and loss of benefits.

47. The unlawful and willful actions of the Defendant constitute unlawful discrimination against Plaintiff on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951, *et seq.*

## FACTUAL ALLEGATIONS PERTAINING TO PLAINTIFF'S DISABILITY AND WRONGFUL DISCHARGE CLAIMS

48. Paragraphs 1 through 47 are hereby incorporated by reference as though the same were fully set forth at length herein.

49. In or around March 2016, Plaintiff seriously injured his knee while in the course and scope of performing his job duties for Defendant.

50. Plaintiff was ultimately diagnosed with a damaged patella.

51. Plaintiff's knee injury constituted a disability under the ADA and PHRA in that it was a physical impairment which substantially limited Plaintiff in one or more major life activities, including, but not limited to, walking, standing, kneeling, and bending.

52. Plaintiff promptly reported his work injury and increasing mobility issues to Mr. Erdman and Mr. Casler and requested information regarding Defendant's approved workers' compensation doctors.

53. Mr. Casler told Plaintiff that he was unfamiliar with Defendant's workers' compensation protocol, and instructed Plaintiff to call Mr. Monroe.

54. When Plaintiff contacted Mr. Monroe as directed, Mr. Monroe told Plaintiff that he would have to do an investigation.

55. However, Defendant did not follow up with Plaintiff regarding the processing of his workers' compensation claim or provide Plaintiff with a list of doctors from whom he could seek medical treatment.

56. As a result, in or around early May 2016, Plaintiff, whose knee pain was becoming increasingly severe, was forced to visit an urgent care clinic.

57. There, Plaintiff was informed that he needed an MRI, but that he would have to go through Defendant's workers' compensation carrier to obtain it.

58. Plaintiff notified Defendant about his visit to the urgent care center and need to obtain an MRI and treatment for his work-related injury.

59. Indeed, Plaintiff attempted to follow up with Defendant to set up a doctor's appointment through Defendant's workers' compensation carrier on several occasions throughout May 2016, but was unable to do so.

60. On June 6, 2016, Plaintiff was terminated for reasons which are clearly pretextual.

61. It is believed and therefore averred that Defendant terminated Plaintiff's employment because of his disability, because it regarded Plaintiff as disabled, and/or because of his past record of impairment in violation of the ADA.

62. It is further averred that Defendant wrongfully discharged Plaintiff's employment for attempting to exercise his rights under the Pennsylvania Workers' Compensation Act, and/or because it believed Plaintiff intended to file a workers compensation claim petition, to seek wage loss benefits, and/or to seek medical reimbursement for his treatment.

63. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, earnings and earnings potential, loss of potential bonuses, and other economic damages, and has also suffered

mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to his reputation.

## COUNT I
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. § 2000e, *et seq.*
## Race Discrimination and Retaliation

64. Paragraphs 1 through 63 are hereby incorporated by reference as though the same were fully set forth at length herein.

65. At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

66. Upon information and belief, at all times relevant hereto, Defendant employed fifteen (15) or more employees.

67. Plaintiff was subjected to discrimination, as described above, on the basis of his race.

68. Plaintiff's internal complaints of race discrimination constitute protected activity within the meaning of Title VII.

69. Defendant failed to take appropriate remedial action to investigate and address the discrimination faced by Plaintiff.

70. Plaintiff was terminated on the basis of his race and in retaliation for his complaint of race discrimination in the workplace.

71. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings and earnings potential, and other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgement in his favor and against Defendant and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, loss of health benefits, and raises in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000);

B. Compensatory, exemplary, and/or punitive damages;

C. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as the Court deems just and equitable under the circumstances.

## COUNT II
## PENNSYLVANIA HUMAN RELATIONS ACT
### 43 P.S. § 951, *et seq.*
### Race Discrimination and Retaliation

72. Paragraphs 1 through 71 are hereby incorporated by reference as though the same were fully set forth at length herein.

73. The conduct described herein and above constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, in that Defendant unlawfully and illegally discriminated against Plaintiff because of his race and in retaliation for his complaints regarding race discrimination in the workplace.

74. Plaintiff is therefore afforded the opportunity to seek any and all remedies available under the PHRA, 43 P.S. § 951, *et seq.*

75. Because of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered damages in the form of, inter alia, loss of past and future wages and

10

compensation, personal humiliation, emotional distress, embarrassment, loss of employment, promotion benefits, earnings and earnings potential, and loss of other significant economic benefits.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, loss of health benefits, and raises in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000);

B. Compensatory damages in an amount to be determined at trial;

C. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as the Court deems just and equitable under the circumstances.

## COUNT III
## VIOLATION OF 42 U.S.C. § 1981
### Race Discrimination and Retaliation

76. Paragraphs 1 through 75 are hereby incorporated by reference as though the same were fully set forth at length herein.

77. Plaintiff avers that Defendant discriminated against him with respect to the terms and conditions of his employment, and terminated his employment on account of his race and on account of his protected complaints regarding unlawful race discrimination in the workplace.

78. These actions aforesaid constitute violations of 42 U.S.C. § 1981, and Plaintiff seeks relief for these adverse actions.

11

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages and front pay in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000);

B. Punitive damages, as permitted by applicable law, in an amount to be determined by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct, and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just and proper, including, but not limited to, emotional distress and/or pain and suffering damages;

D. Plaintiff's costs, disbursements, and attorneys' fees incurred in the prosecution of this action;

E. Pre-judgment interest in an appropriate amount; and

F. Such other and further relief as is just and equitable under the circumstances;

G. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

**COUNT IV**
**AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101,** *et seq.*
<u>**Discrimination**</u>

79. Paragraphs 1 through 78 are hereby incorporated by reference as though the same were fully set forth at length herein.

80. At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

81. Upon information and belief, at all times relevant hereto, Defendant had fifteen (15) or more employees.

82. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

83. As described above, Plaintiff's knee injury is a physical impairment that substantially limited Plaintiff in one or more major life activity.

84. Defendant was aware of Plaintiff's disability, record of disability/impairment, and/or regarded Plaintiff as being disabled within the meaning of the ADA.

85. Upon information and belief, Plaintiff has since been replaced by a non-disabled individual.

86. By reason of the foregoing, Defendant, through its agents, officers, servants, and/or employees have violated the ADA by discharging Plaintiff because of his disability, his record of disability/impairment, and/or or because Defendant regarded him as being disabled within the meaning of the ADA.

87. As a result of Defendant deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings, earnings potential, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000);

B. Monetary compensation for the amounts expended by Plaintiff on health insurance premiums;

C. Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

D. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

F. Pre-judgment interest in an appropriate amount;

G. Such other and further relief as is just and equitable under the circumstances.

### COUNT V
### PENNSYLVANIA HUMAN RELATIONS ACT
### 43 P.S. § 951, *et seq.*
### Disability Discrimination and Retaliation

88. Paragraphs 1 through 87 are hereby incorporated by reference as though the same were fully set forth at length herein.

89. The conduct described herein and above constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, in that Defendant unlawfully and illegally discriminated against Plaintiff because his disability, his past record of impairment, and/or because it regarded Plaintiff as disabled under the PHRA.

14

90. Plaintiff is therefore afforded the opportunity to seek any and all remedies available under the PHRA, 43 P.S. § 951, *et seq.*

91. Because of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered damages in the form of, inter alia, loss of past and future wages and compensation, personal humiliation, emotional distress, embarrassment, loss of employment, promotion benefits, earnings and earnings potential, and loss of other significant economic benefits.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, loss of health benefits, and raises in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000);

B. Compensatory damages in an amount to be determined at trial;

C. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as the Court deems just and equitable under the circumstances.

## COUNT VI
### WRONGFUL DISCHARGE IN VIOLATION OF PENNSYLVANIA PUBLIC POLICY

92. Paragraphs 1 through 91 are hereby incorporated by reference as though the same were fully set forth at length herein.

93. In or around March 2016, during the course and scope of his employment, Plaintiff suffered a work-related injury.

94. Plaintiff's work-related injury caused Plaintiff to require medical care and treatment.

95. Plaintiff provided Defendant with notice of the work-related injury and reported the same to the health care provider he saw at the urgent care center as an injury sustained in the course and scope of his employment.

96. Defendant unlawfully violated the public policy exception to Pennsylvania's common law tradition of at-will employment by unlawfully terminating Plaintiff's employment in retaliation for Plaintiff's attempts to avail himself of the benefits of the Pennsylvania Worker's Compensation Law.

97. Plaintiff's termination was in violation of public policy pursuant to Pennsylvania common law.

**WHEREFORE,** as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000);

B. Compensatory damages and lost benefits;

C. Punitive damages for Defendant's discriminatory practices which were committed with malicious and reckless indifference to Plaintiff's rights;

D. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law;

E. Pre-judgment interest in an appropriate amount; and

F. Such other and further relief as is just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: _____
Michael Murphy, Esquire
Michael Groh, Esquire
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-021
mgroh@phillyemploymentlawyer.com
Attorneys for Plaintiffs

Dated: December 5, 2017

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to his potential claims and his claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation